IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT ) | |
| OPPORTUNITY COMMISSION, ) | |
| ) | 1:12-cv-0275-SEB-TAB |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| CELADON TRUCKING SERVICES, INC ) | |
| ) | |
| Defendant. ) | |
| ) | |

CONSENT DECREE

The Equal Employment Opportunity Commission ("Commission") instituted this action under the authority granted by Section 107 of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101, et seq. ("ADA"). The Commission's action was brought to correct unlawful employment practices on the basis of disability and other conduct which violates the ADA. Specifically, the Commission alleged in its Complaint that Celadon Trucking Services, Inc. ("Celadon") failed to hire employees because of their disabilities and/or perceived disabilities and that Celadon violated the ADA by subjecting applicants to unlawful pre-offer disability-related inquiries and by employing qualification standards or selection criteria that screen out or tend to screen out a class of individuals with disabilities.

The Commission and Celadon hereby stipulate to the jurisdiction of the Court

over the parties and the subject matter of this action.

The parties have advised the Court that they desire to resolve the allegations in the Complaint without the burden, expense, and delay of further litigation.

It is therefore the finding of this Court, based on the record as a whole, that:

(1) the Court has jurisdiction over the parties and the subject matter of this action;

(2) the purpose and provisions of the ADA will be promoted and effectuated by the entry of this Consent Decree; and (3) this Consent Decree resolves all the matters in controversy between the parties as provided in parts 1 through 11 below.

It is therefore ORDERED, ADJUDGED AND DECREED as follows:

PART ONE: GENERAL PROVISIONS

Section 101: Non-Discrimination in Employment and Non-Retaliation Celadon is hereby permanently enjoined from:

      a.    discriminating against employees because of disability;

      b.    making pre-offer disability-related inquiries and physical examinations on applicants for driver positions;

      c.    employing qualification standards or selection criteria that screen out or tend to screen out a class of individuals with disabilities except as otherwise required by federal law;

      d.    engaging in any act, policy or practice that has the purpose or effect of discriminating against employees or applicants for employment on the basis of disability except as otherwise required by

federal law; and

e. discriminating or retaliating in any way against any person because of opposition to a practice made unlawful under the ADA or because of the filing of a charge, the giving of testimony, assistance or participation in any manner in an investigation, proceeding or hearing under the ADA.

PART TWO: EMPLOYMENT PRACTICES

Section 201: Cessation of Pre-Offer Disability-Related Inquiries and Medical Examinations

Within 30 days of the entry of this Consent Decree, Celadon will cease making disability-related inquiries and performing medical examinations at any time before a conditional offer of employment is made to an applicant. Specifically, Celadon will affirm in writing within 5 days of the entry of this Consent Decree that recruiters employed by Celadon and/or who recruit drivers on Celadon's behalf and/or at the behest of Celadon have been instructed in writing that they are not to make global inquiries into applicants' health histories, and they are not to ask applicants if the applicant has ever been injured, hospitalized, had surgery, been treated by a doctor on an outpatient basis, if the applicant is currently being treated by a doctor, or if the applicant is currently on any medications. Within 30 days of the entry of this Consent Decree, Celadon will also (1) cease requiring that applicants provide medical releases for all surgeries within the last year and all orthopedic surgeries

within the last five years prior to attending orientation; (2) cease conducting any physical and/or medical examinations, including Department of Transportation- compliant physical examinations, until after the applicant has completed all other non-medical phases of orientation, including all other testing required by the DOT and/or Celadon, and has received a conditional offer of employment, with the exception that Celadon may conduct the applicant's DOT-required drug screen at the same time it conducts the applicant's DOT-compliant physical examination and for all drivers who attend orientation and do not possess and present at orientation a valid DOT medical certificate, Celadon may defer until after the completion of the DOT-compliant physical that applicant's DOT-required road test where doing so is required by applicable state and/or federal laws and/or regulations; (3) Defendant will contractually agree with its medical provider to conform to all federal laws and regulations including, but not limited to the ADA and DOT regulations; and (4) Defendant will instruct its medical provider not to disqualify for medical reasons applicant drivers on the basis of the applicant's inability to provide a medical release and/or other medical information during the orientation time frame, and, instead, allow the applicant driver not less than 7 business days from the physical examination/medical inquiry to provide the requested release and/or other medical information. Within 30 days Defendant shall revise its policies and other communications and literature, including its orientation and recruitment policies and literature, to comply with the provisions set forth in this paragraph.

Section 202: Cessation of DAC Reporting and Removal of False Information from DAC Reports

Celadon will within 24 hours of the entry of this decree cease reporting false information on the "DAC" and/or HireRight reports or any other similar reports of applicant drivers who are not hired by Celadon. Within 14 business days from the entry of this Decree, Celadon will request the removal of all false information placed by it on the "DAC"/HireRight reports, or any other similar reports, of class members Stephen Hudetts, William Smith, Anthony Stinard, Lana Langley, Myron Henderson, Iffia Bogan, Stephen Allums, Robert Perry, David Gasser, Aron Griffin, Patricia Kimbrell, Harvey Landry, Charles Shrubshall, Clifford Valley, Daniel Beavers, Darrell Fredell, Jermaine Smith, Matthew Muldrow, Travis Maddox, Michelle Baggett Davis, Dean Musselwhite, and Steve Martz. To the extent that an applicant was never hired or employed by Celadon, Celadon shall cease reporting that said applicants were hired and/or employed by Celadon and that said applicants quit or that they were fired and/or terminated by Defendant. Celadon shall take all steps reasonable to ensure that this information is removed, including making follow-up inquiries with the reporting agencies to ensure the removal of the false information.

Within 90 days of the entry of this Decree, Celadon shall mail a letter confirming removal of all information from each individual's DAC report and similar reports to the Commission in the care of Laurie A. Young, Regional Attorney, or her successor, Equal Employment Opportunity Commission, 101 W.

Ohio Street, Suite 1900, Indianapolis, Indiana, 46204.

Section 203: Job Offers

Defendant will send a letter by first class mail to the 22 class members referenced in Section 202 of this consent decree. In this letter, Defendant will offer each former applicant driver the opportunity to reapply with Defendant. Defendant will use the last address Defendant has on file for said former applicant, including any addresses disclosed during discovery in this matter, and will make at least one attempt through use of a commercially available background checking service such as Accurint to obtain a valid address if the last-known address is incorrect. In this letter, Defendant will state that if the applicant meets all requirements set forth by Defendant for receiving an invitation to Celadon's driver orientation, that the applicant will receive said invitation and will be guaranteed employment as a driver with Celadon if the applicant successfully completes all phases of driver orientation, including a properly administered, DOT-compliant physical examination. The standards for receiving an invitation to orientation and for successful completion of orientation shall be no more stringent, except where required by law, than those standards were on the date of the filing of this lawsuit. Additionally, the standards shall be no more stringent than the standards currently used by Celadon in determining whether an applicant who is not receiving an invitation to orientation as a result of this litigation receives an invitation to orientation or successfully completes orientation.

PART THREE: MONETARY RELIEF

Section 301: Failure to Hire Because of Disability Claimants[1]

    (a) Stephen Hudetts

        (1) To resolve this matter without the burden and expense of further litigation and to settle the back pay claims brought by the Commission for "failure to hire because of the disability" claimant Stephen Hudetts, Celadon shall pay $25,254.20, all of which shall be treated for tax purposes as wages. Celadon shall not deduct from any settlement amount the employer's share of any costs, taxes or social security required by law to be paid by Celadon. Celadon shall be responsible for paying its share of all applicable payroll taxes for the settlement funds attributable to back wages paid to the claimants. Celadon shall issue a W-2 for any payment of back wages, and all withholding required by law shall be deducted from the same.

        (2) To resolve this matter without the burden and expense of further litigation, Celadon shall pay $4,775.70 to settle the compensatory damages claims brought by the Commission for claimant Stephen Hudetts. This amount shall be treated for tax purposes as compensatory

---

[1] Though the EEOC refers to Stephen Hudetts and William Smith as "Failure to Hire Because of Disability" claimants, the EEOC has asserted two claims for these individuals: (1) a failure to hire because of disability claim under 42 U.S.C. § 12112(a) and (2) an unlawful disability-related inquiry claim under 42 U.S.C. § 12112(d)(2). The monetary relief referenced in section 301 settles all claims brought by the EEOC on behalf of Stephen Hudetts and William Smith.

damages. There shall be no tax deductions from amounts designated compensatory damages. Celadon shall not deduct from the settlement amount the amount of the employer's share of any costs, taxes or social security required by law to be paid by Celadon. Celadon shall issue a form 1099 to Mr. Hudetts for the amount of damages that have been deemed compensatory damages.

(3) All payments shall be made by check and made payable to Mr. Hudetts or his heirs or assigns in the event of his death, for their respective amounts. Within thirty days from the entry of this Consent Decree by the Court, the Commission will forward a release to Mr. Hudetts for his execution. A copy of the release is attached hereto as Appendix A. The Commission will notify counsel for Celadon on receipt of the release executed by Mr. Hudetts. Then, within forty-five days from the entry of this Consent Decree by the Court, or within five days of the Commission's notification that it has received the release signed by Mr. Hudetts, whichever is later, Celadon shall mail the settlement checks by certified mail to the addresses provided by the EEOC. Defendant shall mail a copy of Mr. Hudetts' checks and proof of their delivery to him (a signed certified mail receipt) to the Commission in the care of Laurie A. Young, Regional Attorney, or her successor, Equal Employment Opportunity Commission, 101 W. Ohio Street, Suite 1900, Indianapolis, Indiana, 46204. The Commission shall then forward Mr. Hudetts'

executed release to Celadon's counsel upon receipt of proof of delivery of the settlement checks.

(b) William Smith

(1) To resolve this matter without the burden and expense of further litigation and to settle the back pay claims brought by the Commission for "failure to hire because of the disability" claimant William Smith, Celadon shall pay $7,596.20, all of which shall be treated for tax purposes as wages. Celadon shall not deduct from any settlement amount the employer's share of any costs, taxes or social security required by law to be paid by Celadon. Celadon shall be responsible for paying its share of all applicable payroll taxes for the settlement funds attributable to back wages paid to the claimants. Celadon shall issue a W-2 for any payment of back wages, and all withholding required by law shall be deducted from the same.

(2) To resolve this matter without the burden and expense of further litigation, Celadon shall pay $4,775.70 to settle the compensatory damages claims brought by the Commission for claimant William Smith. This amount shall be treated for tax purposes as compensatory damages. There shall be no tax deductions from amounts designated compensatory damages. Celadon shall not deduct from the settlement amount the amount of the employer's share of any costs, taxes or social security required by law to be paid by Celadon. Celadon shall issue a form 1099 to

William Smith for the amount of damages that have been deemed compensatory damages.

(3) All payments shall be made by check and made payable to Mr. Smith or his heirs or assigns in the event of his death, for their respective amounts. Within thirty days from the entry of this Consent Decree by the Court, the Commission will forward a release to Mr. Smith for his execution. A copy of the release is attached hereto as Appendix A. The Commission will notify counsel for Celadon on receipt of the release executed by Mr. Smith. Then, within forty-five days from the entry of this Consent Decree by the Court, or within five days of the Commission's notification that it has received the release signed by Mr. Smith, whichever is later, Celadon shall mail the settlement checks by certified mail to the addresses provided by the EEOC. Defendant shall mail a copy of Mr. Smith's checks and proof of their delivery to him (a signed certified mail receipt) to the Commission in the care of Laurie A. Young, Regional Attorney, or her successor, Equal Employment Opportunity Commission, 101 W. Ohio Street, Suite 1900, Indianapolis, Indiana, 46204. The Commission shall then forward Mr. Smith's executed releases to Celadon's counsel upon receipt of proof of delivery of the settlement checks.

Section 302: Unlawful Pre-Offer Disability-Related Inquiry Claimants [2]

---

[2] The monetary relief referenced in section 302 settles all claims brought by the EEOC on behalf of unlawful pre-offer disability-related inquiry claimants. The provisions of Section 302 do not apply to

To resolve this matter without the burden and expense of further litigation, Celadon shall pay a $157,598.20 to settle the compensatory damages claims brought by the Commission for "unlawful pre-offer disability-related inquiry" claimants Anthony Stinard, Lana Langley, Myron Henderson, Iffia Bogan, Stephen Allums, Robert Perry, David Gasser, Haywood Glaze, Aron Griffin, Patricia Kimbrell, Harvey Landry, Charles Shrubshall, Clifford Valley, Daniel Beavers, Darrell Fredell, Jermaine Smith, Matthew Muldrow, Travis Maddox, Michelle Baggett Davis, Dean Musselwhite, and Steve Martz. Distribution of this compensatory damages fund will be solely determined by the EEOC. There shall be no tax deductions from amounts designated as compensatory damages. Celadon shall not deduct from the settlement amount the amount of the employer's share of any costs, taxes or social security required by law to be paid by Celadon. Celadon shall issue a form 1099 to each claimant for the amount of damages that have been deemed compensatory damages.

Section 303: Determination of Individuals Who Will Get Relief

The EEOC will determine the amounts payable to each of the class members from the damages fund referenced in Section 302 of this Consent Decree.  Celadon shall not participate or have any role in determining eligible claimants or amounts payable to such individuals.  The Commission's determinations may be subject to

---

claimants Stephen Hudetts or William Smith.

review at a fairness hearing conducted by the Court. Celadon will not challenge the EEOC's determinations.

PART FOUR: CLAIMS PROCESS AND FAIRNESS HEARING[3]

Section 401: Notice of Proposed Distribution

Within thirty (30) days of the entry of this Consent Decree the EEOC will provide to the Court: a distribution list specifying the amount of compensatory damages for each "unlawful pre-offer disability-related inquiry" claimant, procedures for class member notification and a fairness hearing.

Within sixty days of entry of this Consent Decree, the EEOC will send, via U.S. mail, to the class members listed in Section 302 at their last known addresses: a Notice of Proposed Distribution, the requirement of signing a release to receive a damages award, the requirement of keeping the Commission informed of any address changes, and the procedures for objecting to the proposed distribution. If any notices are returned to the EEOC as undeliverable, the EEOC will attempt to find a more current address for those individuals via Accurint searches. If a more current address is found, the Commission promptly will re-mail the Notice to the more current address.

Section 402: Disqualification for Failure to Update Address

A class member eligible for relief may be disqualified from receiving relief

---

[3] The fairness hearing proceedings outlined in Part Four of this Consent Decree shall not apply to claimants Stephen Hudetts or William Smith.

under this Consent Decree if the individual fails to notify the EEOC of an address change.

Section 403: Letters of Disagreement

Individuals may submit to the Court letters indicating any disagreement with the proposed distribution, including any disagreement they may have as to the size of any payment. This procedure will be the sole means by which individuals may challenge the proposed distribution under this Consent Decree.

If no letters of disagreement (Section 403) are submitted to the Court within sixty days of the EEOC's service of the notice of proposed distribution (Section 401), the Court will issue a Final Order of Distribution.

Section 404: Fairness Hearing

If a letter of disagreement (Section 403) is submitted to the Court within sixty days of the EEOC's service of the notice of proposed distribution (Section 401), the Court will schedule a fairness hearing. The Court will serve notice of the fairness hearing on the parties and any individuals who have submitted a letter of disagreement to the Court. At the fairness hearing, individuals who have submitted letter objections will have an opportunity to be heard. At the conclusion of the fairness hearing, the Court will render any appropriate rulings, including a Final Order of Distribution.

Section 405: Final Order of Distribution

In order to receive his/her portion of the damage award, each class member shall execute a release in the form attached hereto as Appendix B. Within thirty days from the Court's issuance of the Final Order of Distribution referenced in Sections 403 and 404 of this Decree, the Commission will forward a release to the claimants for their execution.  Any class member who fails to timely return an executed release shall waive any claim to relief under this Decree. The Commission will notify counsel for Celadon on receipt of the releases executed by the claimants. Then, within forty-five days from the entry of a Final Order of Distribution by the Court, or within five days of the Commission's notification that it has received the releases signed by the claimants, whichever is later, Celadon shall mail the settlement checks to the claimants or their heirs or assigns in the event of their death, by certified mail to the addresses provided by the EEOC. Defendant shall mail a copy of the claimants' checks and proof of their delivery to them (a signed certified mail receipt) to the Commission in the care of Laurie A. Young, Regional Attorney, or her successor, Equal Employment Opportunity Commission, 101 W. Ohio Street, Suite 1900, Indianapolis, Indiana, 46204.  The Commission shall then forward the claimants' executed releases to Celadon's counsel upon receipt of proof of delivery of the settlement checks.

PART FIVE: CONTINGENCY FOR REMAINDER

If for whatever reason any part of the settlement fund intended for the class members under this Consent Decree is unable to be paid as designated above, the remainder shall be split evenly among the class members or their heirs or assigns in the event of their death, who receive an award pursuant to this Decree and have returned timely executed releases. The Commission shall calculate any such division without further action by the Court.

PART SIX: TRAINING AND NOTICE POSTING REQUIREMENTS

(1) Celadon shall require that its managers and supervisors, all of its human resources personnel, and all other personnel who participate in the recruitment and orientation processes attend a training seminar regarding the ADA and disability discrimination.  Said individuals must attend a seminar within 90 days from the date of entry of this Decree.  Thirty (30) days prior to the date of the seminar, Celadon shall provide notice to the Commission regarding the date, time and place of the seminar, and shall send to the Commission a copy of the seminar program. The training shall specifically discuss pre-offer medical examinations and inquiries.

(2) Celadon agrees to post the Notice of Non-Discrimination Policy attached as Appendix C to this Decree in a conspicuous location on the premises of each of its locations. Said notices shall remain posted throughout the term of this Decree, which the parties agree to be five (5) years.

PART SEVEN: REPORTING REQUIREMENTS

Celadon shall submit reports to the Commission detailing its compliance with this decree. Five (5) annual reports shall be submitted during the term of this decree. The first report shall be due one year from the entry of this Decree and the subsequent reports shall be mailed to the Commission annually and no later than the anniversary of the date on which the initial report was mailed. The report shall include the following information for the twelve (12) month period preceding the report: (1) The name and applicant file of each applicant for a driver position who was not hired by Defendant because of a medical condition/reason and/or disability; and (2) a detailed description of any changes made to the application and orientation process. Reports shall be sent to the attention of Laurie A. Young, Regional Attorney, or her successor, Equal Employment Opportunity Commission, 101 W. Ohio Street, Suite 1900, Indianapolis, Indiana, 46204.

PART EIGHT: ADMINISTRATION OF THE CONSENT DECREE

Section 801: Role of EEOC

The EEOC may review compliance with this Consent Decree. As part of such review, upon written notice to Dennis Elschide or his successor of not less than 24 hours, the EEOC may inspect the premises, interview employees, and examine and copy documents. From time to time, the Commission may request the opportunity to

review all, or a portion, of Celadon's applications, sign-up sheets, employment records, and/or any record regarding applicants. Celadon will comply with any such request within five business days.

Section 802: EEOC Monitoring

In the event that the EEOC alleges that a violation of this Consent Decree has occurred, the EEOC shall give notice in writing specifically identifying the alleged violation to Celadon. Celadon will have ten days in which to investigate and respond to the allegation.

PART NINE: COSTS

Except as otherwise noted in this Consent Decree, each party will bear its own attorney fees and costs of the litigation.

PART TEN: DECREE BINDING ON SUCCESSOR

This decree shall be binding on Defendant and its successors and assigns in interest.

PART ELEVEN: RETENTION OF JURISDICTION

Section 1101: Term of the Decree

The term of this Consent Decree shall be for five (5) years. Section 1102:

Retention of Jurisdiction

The Court will retain jurisdiction of this cause for five years for purposes of

monitoring compliance with the Consent Decree and entry of such further orders or modifications as may be necessary or appropriate.

|  |  |
|---|---|
| 07/31/2015<br>Date | _____<br>SARAH EVANS BARKER, JUDGE<br>United States District Court<br>Southern District of Indiana |

Copies to:

Laurie A. Young
Michelle F. Eisele
Aarika D. Mack-Brown
Miles E. Shultz
Jo Ann Farnsworth
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
101 W. Ohio Street, Suite 1900
Indianapolis, IN  46204
Email:  legal.station@eeoc.gov
           michelle.eisele@eeoc.gov aarika.mack-brown@eeoc.gov miles.shultz@eeoc.gov
           joann.farnsworth@eeoc.gov


R. Anthony Prather
David J. Pryzbylski
Alicia Marcia Raines
BARNES & THORNBURG LLP
11 S. Meridian Street
Indianapolis, Indiana 46204
Email:  tony.prather@btlaw.com
           david.pryzbylski@btlaw.com
           alicia.raines@btlaw.com